### WESLEY STEVENS v. THE STATE.

No. 8766.   Delivered May 13, 1925.

Rehearing Denied Oct. 17, 1925.

1.—Manufacturing Intoxicating Liquor—Evidence—Qualification of Bill—No Error Presented.

Where on a trial for manufacturing intoxicating liquor, appellant complains of testimony of witnesses, and such bill is qualified by the trial court, showing that such testimony was properly admissible, no error is presented.

2.—Same—Evidence—Hypercritical Objections—Present No Error.

Where appellant on the trial objected to the testimony of a witness who testified that he saw appellant pouring something out of a jar, that was either whisky or mash, he did not know which, such objection was hypercritical, and presents no error.

3.—Same—Evidence—Physical Conditions—Held Admissible.

Where the testimony of the sheriff as to finding of corn, broken fruit jars; with small quantities of whisky contained in the tops, on appellant's premises, at the time of his arrest, such testimony was properly admitted.

**4.—Same—Evidence—Of Flight—Resisting Arrest—Admissible.**

Evidence of flight, and of resisting arrest have always been held admissible, and the testimony of the witness Little of a conviction and altercation between appellant and witness, when witness was attempting to arrest him, was properly admitted, it being shown that appellant was not under arrest at the time.

**5.—Same—Evidence—Acts of third Party—When Admissible.**

Where another person is acting together with appellant on his premises in efforts to conceal the physical evidence of the crime, the defendant being present, on the arrival of officers at the scene, such evidence is properly admitted.

**6.—Same—Evidence—Of Physical Facts—Properly Received.**

Where the sheriff was permitted to testify as to finding a coil in appellants field, at the time of his arrest, and the identification of the coil by the witness Little, was properly received. The objection to this testimony going rather to its weight, than to its admissibility.

**7.—Same—Circumstantial Evidence—Latitude of.**

Where on a trial for manufacturing intoxicating liquor, the state relies for a conviction upon circumstantial evidence, it was not error to permit a witness to testify as to how liquor is manufactured, and that it could be manufactured with the articles found on appellant's premises, such witness having qualified himself by showing his experience etc., along said line.

ON REHEARING.

**8.—Same—Jury—Members of Klu Klux Klan—Not disqualified.**

When presented with twenty talesmen to complete the jury, appellant filed a motion to quash the panel of talesmen on the ground that they were members of the Klu Klux Klan. We think that the qualification of a juror is one of fact, with reference to the particular individual. Belonging to this order, might or might not disqualify any individual, dependent upon the facts surrounding the individual juror. No evidence of such disqualification appears in this record. The mere fact that such talesmen were members of this organization, alone, is not sufficient to disqualify them, and the motion for rehearing is overruled.

Appeal from the District Court of Milam County. Tried below before the Hon. John Watson, Judge.

Appeal from a conviction of manufacturing intoxicating liquor, penalty, two years in the State penitentiary.

The opinion states the case.

*Chambers, Wallace & Gillis*, for appellant.

*Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State .

BERRY, JUDGE.—Appellant was convicted in the district court of Milam County of manufacturing intoxicating liquor and his punishment assessed at confinement in the penitentiary for two years.

By bill of exception No. Two appellant complains of the action of the court in permitting the witness Little to testify as to what was done at Bob Stevens' house by any of the parties during the absence of the defendant. The court qualifies this bill by saying that the Bob Stevens referred to was the father of the defendant and that the defendant lived across the field or pasture about two hundred and fifty yards from Bob Stevens in another house, and that immediately after the little girl in question ran in defendant's house the defendant came hurriedly out of the house and ran to the barn and came out, and that defendant began pouring some liquid out of a jar on the ground. Under the court's explanation, this testimony was clearly admissible.

Bill of exception No. Three complains of the court's action in permitting the witness Little to testify concerning the following matter: that he had seen the defendant come out of the house with a jar and was pouring out the contents of the jar when the witness passed him the following question was asked "And did you know what was in the jar?" and he replied "No sir, I really could not tell you what was in the jar, either whiskey or mash." The objection being that the party's answer that it was either whiskey or mash should not have been permitted, as the witness had stated that he did not know what was in the jar. This objection is strongly hyper-critical and the bill shows no error.

Bill of exceptions No. Four complains of the court's action in permitting Sheriff Rogers to testify that he searched the premises, went into the barn and that when he went into the barn there were four or five bushels of corn there and forty or fifty fruit jars broken, and they were broken up and the tops fell over and that he took the empty jars and two or three that were not broken and picked up the whiskey that was in the tops of the fruit jars and in some of the bottoms and poured some in the fruit jars and brought it to town. This testimony was clearly admissible as showing the physical condition of the premises where the offense was alleged to have been committed.

Bill of exception No. Five complains of the court's action in permitting the witness Little to testify that after he had gone with Sheriff Rogers to the house of appellant, that a conversation and altercation accrued these witness and the appellant relative to the shooting of the witness in an altercation between him and the appellant. The objection being that the appellant was under arrest at the time of this occurrence. The court's qualification to this bill shows clearly that the appellant was not under arrest but that the altercation grew out of the attempt of the witness Little to arrest the appellant and was admissible under all the authorities in this State. Evidence of flight and evidence of resisting arrest have always been held to be admissible.

Bill of exception No. Six complains of the court's action in permitting the witness Little to testify that after he had gone with Sheriff

Rogers out to Bob Stevens' and had followed a little girl from Stevens' premises to the premises of the defendant, and had followed Jim Brashear from the barn of the defendant when he ran away and that the witness saw Brashear with a coil or worm in his hand and that he threw it over in some bushes. This bill is qualified with the statement that the witness testified that he saw defendant and Brashear run out of the back door of the house occupied by them, immediately upon the little girl entering and they then ran to a barn or tin house together and defendant came out with a jar of liquid and poured it on the ground and that Brashear came out of the barn with a worm or coil in his hands at the time or shortly after defendant and Brashear ran and witness outran him and witness secured the coil or worm Brashear had when he left the barn or house. This testimony was clearly admissible as explanatory of the physical facts found at the scene where the offense is alleged to have been committed.

By bill of exception No. 7 appellant complains of the court's action in permitting the state to offer in evidence the can or container and coil or tube identified by the Sheriff and another witness as having been found in the field. This bill shows that these articles were found on defendant's premises as testified to by the witnesses at the time of the arrest and search of said premises and were clearly admissible.

By bill of exception No. Eight appellant complains of the court's action in permitting witness Little to testify that the coil identified by Sheriff Rogers as having been found in the field was in his judgment the same coil that Brashear had when he was arrested. The court qualifies this bill by stating that there was only one coil found on the premises and the witness Little gives his reason for identifying the coil. The objection goes rather to the weight than to the admissibility of the evidence and under the explanation of the court, we cannot do otherwise than hold that no error is shown in its admission.

Bill of exception No. Nine, complains of the court's action in permitting the witness Harris to testify as to how liquor is manufactured. The court qualifies this bill by saying that the witness was offered to prove that whisky could be manufactured with the articles found on the premises, and that upon objection as to qualification he was permitted to answer as to experience etc., along said line. And that the charge in the indictment was unlawful manufacture of intoxicating liquor and the case was submitted under a charge on circumstantial evidence.

We see no error in the trial court's action in permitting this testimony.

The court has given a full and a fair charge on the issues presented by the evidence and finding no error in the record, it is our opinion that the judgment should be in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

This case was affirmed at a former term of this court and is now before us on appellant's motion for rehearing.

Appellant seriously insists that we were in error in failing to sustain his first proposition in his brief to the effect that the trial court erroneously overruled his challenge to the array of talesmen. The motion to challenge the array shows that after the jury for the week had been drawn and after the state had made its challenges and the defendant had made his challenges that five jurors had been accepted by the state and defendant, that the court thereupon directed the sheriff to summon twenty talesmen to report at 1:30 o'clock on the day of the trial and that twenty men so summoned were in court at that time and were sworn and tested. One of them was excused for cause and that of the remaining nineteen talesmen thirteen stated that they were members or had been members of the Ku Klux Klan, and six members stated that they were not members of the said Klan, that thereupon the defendant asked permission from the court to file a motion to quash the panel of talesmen so summoned by the sheriff, and receiving permission from the court to do so appellant filed his motion setting up as a reason why they should be discharged that the Ku Klux Klan and its members were taking active steps to secure conviction of all persons accused of violating the prohibition law; and that the sheriff and his deputies were members of the Ku Klux Klan and in sympathy with its activities and that in summoning the said talesmen the sheriff and his deputies had summoned men known to be members of the Ku Klux Klan and had not summoned citizens without reference to such membership; and that appellant was being forced to trial and deprived of his constitutional right to a trial by a fair and impartial jury. On the issue thus made evidence was introduced. This evidence shows that the Cyclops of the Klan in Milam County had stated that the Klan was actively in the prosecution of people charged with violating the liquor law, and stated that they were going to continue in that regard. The Cyclops was called as a witness and testified that the Klan had not been any more actively engaged in the enforcement of the liquor law than any other good citizen; that they had not published in their literature or otherwise that they were going to do all they could to secure convictions of persons charged with violations of the liquor law any more especially than any other law. Said Cyclops also testified that the Klan had issued a circular at one time offering a reward of $25 to any officer in

.the county for the arrest and conviction of bootleggers but that said reward had been withdrawn because it was believed that it would disqualify all members of the Klan from jury service; that this reward was offered some time in January, 1923.

Testimony from the district clerk shows that the population of Milam County is forty or' fifty thousand people and that there is probably two thousand or two thousand five hundred jurors in the county. The witness Kennedy, one of the deputies who summoned the jurors testified that he was a member of the Klan but that nobody gave him any list to go out and summon the talesmen in question and that he did not have any list; that he summoned fourteen of the talesmen in question and Mr. Rogers summoned six. Rogers, the sheriff, testified that he was a member of the Klan, but also testified that when he took the oath to summon good and sober men he got the best men he could get and that he got people whom he believed would render a fair and impartial verdict, and that his only purpose in summoning the jurors in this case; that he had no intention of summoning Ku Klux Klan members any more than any other good citizen; that he just tried to get good men. Similar testimony was given by deputy sheriff Kennedy. All of the talesmen were asked the question, ''If they knew of any reason why by virtue of their belonging to the Klan or not belonging to the Klan they could not render a fair and impartial verdict in the case? and the talesmen all answered ''No.'' Those who were members of the Klan testified on their voir dire that the fact that they were members would cause them to have no bias in favor of the prosecution in the case. Each of the talesmen testified that they could try the case according to the law and evidence, and that their membership in the Klan would not in any wise influence them. The only serious question raised by this motion is that pertaining to the reward by the Klan. It seems this reward was offered in January, 1923, and this case was not tried until the January term of 1924. It also appears from the record that the reward was withdrawn in a very few days after it was offered. There is nothing in this record to show that any of the talesmen summoned in this case were members of the Ku Klux Klan in January, 1923, at the time the reward was offered, and the record is also silent as to how many members or what members knew of, endorsed or ratified the offering of the reward at the time it was done, and the record is entirely silent as to any member of the jury who tried this case having any connection with the offer of the reward in January 1923. Therefore, we have a simple question as to whether or not membership in the Ku Klux Klan would of itself disqualify a person from serving on the jury in the trial of a liquor case. Appellant presents a very strong and ingenious argument on this question, cites many illustrations of alleged outrages on the part of this organization which he contends

disqualifies the membership from jury service. We regret that we can not agree with appellant's contention in this respect. We think that the question of a man's qualifications for jury service is one of fact with reference to the particular individual. Belonging to this order might or might not disqualify any individual. It would all depend upon the peculiar facts surrounding the individual juror. In this case we find the record entirely silent as to any disqualifying reason touching any particular talesmen called upon for jury service, unless it should be held that membership in the Ku Klux Klan alone is sufficient to disqualify. This we can not hold sufficient.

Believing, therefore, that the case was correctly decided in the original opinion, it is ordered that the appellant's motion for rehearing be in all things overruled.

*Overruled.*